## Canteen Athletic Club's Appeal

*Samuel J. Roberts*, Special Deputy Attorney General, for Liquor Control Board.

*Edward H. Carney*, for appellant.

EVANS, P. J., September 16, 1947.—This is an appeal from an order of the Pennsylvania Liquor Control Board, dated April 22, 1947, refusing appellant's application for a club liquor license for the following reasons:

(*a*) The Liquor License Quota Act of June 24, 1939, P. L. 806, provides for a quota of 117 retail licenses for the sale of liquor and malt beverages in Erie, Erie County, and there are at the present time 178 such licenses in effect, which are of the type counted against such quota. Accordingly, the quota of retail licenses for the said municipality is exceeded.

(*b*) It appears that the charter is not in the possession of the original incorporators or their direct or legitimate successors.

(*c*) Dues are not regularly charged and collected as required by the amended Liquor Control Act and as provided for in the club's bylaws.

(*d*) Records of the organization, including minutes, membership, and financial, are incomplete, inaccurate

and show instances of alteration for the purpose of falsification.

(e) The board is not satisfied that the club has been actually in continuous existence and operation for a period of one year immediately preceding the date of its application.

The Liquor License Quota Act has been construed by this court as being inapplicable to clubs. See our opinion in In re Carrier Post License, 28 Erie 39, where we said:

"Whether the 'quota' law above recited was intended to apply to clubs cannot with certainty be determined from a reading of the act. Nearly sixty well-considered opinions have been written by many of the ablest judges in Pennsylvania, and the conclusions are equally divided. The result is that in approximately half the counties of Pennsylvania club licenses are granted without respect to the 'quota' law and in the other half the limitation has been applied to both commercial and club licenses."

We then concluded that inasmuch as, within its borders, the State of Pennsylvania owns, operates and controls the liquor business, and through its legislators makes the laws governing the same, we would resolve all doubts on the question of intention in the Quota Act against restriction of licenses as to clubs until clarification of legislative intent was afforded through new legislation or amendment.

It now, therefore, becomes necessary for us to consider the provisions of Senate Bill 814, which was passed by both houses at the 1947 session of the legislature but, after the legislature adjourned, was vetoed by Governor James H. Duff for the reason that the bill as passed was legislation favoring a special class of organizations and therefore was clearly unconstitutional. The act as passed by the legislature was designated as an amendment to the Liquor License Quota

Act of 1939 and, after reciting and approving all of the limitations with respect to retail licenses as contained in said act, the new act provided that the Quota Act, for a period of 18 months, should be inapplicable to certain veterans' clubs particularly designated.

A principle of law with respect to the construction of statutes is well stated in Board of Commissioners v. Branaman, 169 Ind. 80, 91, 82 N. E. 65, 69, as follows:

". . . the court may resort not only to contemporaneous and prior acts of the legislature, but also to a subsequent act of that body in *pari materia* for the purpose of ascertaining the meaning of a former statute."

This universally applied principle of construction is recognized in Pennsylvania. The court, in Russ v. Commonwealth, 210 Pa. 544, held p. 553):

" 'The correct rule of interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts in pari materia are to be taken together, as if they were one law: . . . If a thing contained in a subsequent statute, be within the reason of the former statute, it shall be taken to be within the meaning of that statute: . . . and if it can be gathered from a subsequent statute in pari materia, what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute: . . .' "

An act relating to the same subject matter need not be a valid and existing statute to be construed with an ambiguous statute in order to determine its meaning. Unconstitutional, vetoed, repealed and expired statutes relating to the same subject matter should be considered in order to determine the legislative intent in enacting a statute: 2 Sutherland Statutory Con-

struction (3rd ed.) §5203; Russ v. Commonwealth, supra, page 552.

We cannot assume that the legislature, at its 1947 session, would have deliberated upon and passed Senate Bill 814 exempting veterans' clubs from the provisions of the Quota Act if in the legislative mind those organizations were not considered to have been subject to that act prior to such amendment; nor can we assume that a certain class of clubs would have been exempted by new legislation if all clubs were considered to have been exempted by law already enacted.

"In the construction of statutes, the courts start with the assumption that the legislature intended to enact an effective law, and the legislature is not to be presumed to have done a vain thing in the enactment of a statute": 50 Am. Jur. Statutes, §357.

It is not the privilege or the prerogative of this court to maintain its position with respect to the applicability of the Quota Act to clubs when, under the only reasonable interpretation of the Quota Act considered with Senate Bill 814 (passed as an amendment), its original obscurity and uncertainty have so clearly been removed as to leave the matter no longer in doubt.

It has been argued that this amendatory action should be construed only insofar as it attempts to remove all doubt as to the meaning of the original act as it applies to this special class of organizations. Such contention, in our opinion untenable under any circumstances, loses its efficacy from the fact that the exemption was designed for a limited period of 18 months; that it is a legislative declaration that all clubs were within the provisions of the Quota Act; that for a definite period, veterans' clubs were to be excepted; and that after 18 months those veterans' clubs which had not availed themselves of the special privilege were to remain as they always had been prior to the passage of Senate Bill 814, i. e., within the quota provisions of the Act of June 24, 1939, P. L. 806.

We therefore conclude that we must reverse our former position on the applicability of the Quota Act to clubs in view of the legislative intent with respect thereto, clarified as above set forth, and now we must hold that so long as the quota of retail licenses in the County of Erie is full the applicant here and all other club applicants must be refused the right to sell liquor, malt or brewed beverages.

Since the additional grounds for the board's refusal of this license are amply sustained by the evidence, we deem it best to also comment upon them briefly.

The charter was originally granted October 28, 1933, and under it the club operated for a period of one year, when it became inactive. Some time thereafter a Mr. B. A. Miller turned over a certified copy of the charter of A. L. Niemic with the understanding or representation that when the club was reorganized Miller would get, by way of reimbursement, the cost of organization including attorney fees, which he estimated to be about $175.

The minutes show a reorganization meeting in July 1945 at 842 East 8th Street, a small building in the rear of property owned by George Herman. The record shows that B. A. Miller signed the minutes as secretary but he was not present at the meeting. When State officer B. C. Brady made an investigation for the Liquor Control Board he found that the reorganization started with 17 members and at the time of the investigation there were outstanding 104 membership cards. The record shows dues charged and collected in the amount of $3 per year from each member, but a check of 12 members showed that only the four officers had paid dues in accordance with the records made. The other members checked had paid nothing or an amount less than noted as paid. Sixty-five of the membership cards are shown to have been dated and then dated back to a time which would show active

membership for a year prior to the time of applying for the liquor license. The only activities of the club were occasional card games and two picnics. The Liquor Control Board's Exhibits B and C are two pictures of a bare room with a few tables and camp chairs, the club's present quarters.

Section 2 of article I, of the Liquor Control Act, 47 PS §744-2, reads as follows: .

" 'Club' shall mean any reputable group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, having some primary interest and activity *to which the sale of liquor shall be only secondary . . .*" (Italics supplied.)

It is evident that the sale of liquor must supply the substantial source of revenue necessary to furnish and maintain the present quarters at its rental of $100 per month.

In Appeal of Parris Social Club, Inc., 21 Erie 163, and in the Appeal of Fairfield Hose Company, no. 160, February term, 1947, this court held that club licenses will not be granted to organizations, social or beneficial, where it appears that the sale of liquor is other than secondary to the real purposes of the club.

In the Appeal of Parris Social Club, supra, and in Blair's Appeal, 58 D. & C. 495, it was held that the legislature intended that the licensing of places for the dispensation of liquor should be taken from the hands of the court, this power being placed in an agency or board set up under the act, and if the action of the agency or board can reasonably be sustained under the evidence the decision should not be disturbed.

Under all the evidence in this case we conclude that the action of the board must be sustained.

And now, to wit, September 16, 1947, the order of the Pennsylvania Liquor Control Board, refusing a club liquor license to the Canteen Athletic Club, is affirmed and the appeal is dismissed.